# In the United States Court of Federal Claims

Nos. 24-451, 24-456, 24-463, 24-483, 24-495, 24-515, 25-519, 24-525,
24-530, 24-532, 24-535, 24-539, 24-540, 24-542, 24-547, 24-553, 24-571,
24-578, 24-579, 24-584, 24-588, 24-590, 24-604, 24-618, 24-623, 24-630,
24-654, 24-655, 24-673, 24-797

---

TECHNATOMY CORP., et al,

        *Plaintiffs*,

v.

THE UNITED STATES,

        *Defendant*,

and

GOVCIO, LLC, et al.,

        *Intervenor-defendants*.

Consol. No. 24-451 C
Filed: October 10, 2024

---

## OPINION AND ORDER
### Granting in Part and Denying in Part the
### Government's and Intervenors' Motions to Dismiss

**SILFEN,** *Judge*.

This is a very large bid protest case.[1] The Department of Veterans Affairs (VA) solicited offers to overhaul its information technology system over the next five to ten years. The solicitation stated that the VA would award the contract to the thirty offerors (or possibly more) with the highest-rated bids, and the VA planned to then issue task and delivery orders to the awardees. After receiving 173 offers, the VA chose its top thirty. Technatomy and twenty-nine other

---

[1] This opinion was originally issued under seal. The parties had no proposed redactions. The court reissues the opinion publicly.

unsuccessful offerors sued the VA for alleged violations of the solicitation or other government obligations, and fifteen of the awardees intervened to defend their positions.

The government moves to dismiss one complaint in its entirety and parts of twenty-one other complaints, alleging that the solicitation was clear, and the parties who filed those complaints waived any challenges to the terms of solicitation by not raising them before the close of the bidding process. Eight of the intervenors also move to dismiss certain claims, some on the same grounds as the government and some on other grounds. The court **grants in part and denies in part** the government's motion to dismiss and **grants in part and denies in part** the intervenors' motions to dismiss.

## I.      Background

This consolidated bid protest concerns the VA's Transformation Twenty-One Total Technology Next Generation Two (T4NG2) contract. AR1793. The T4NG2 contract is for the delivery of "total [information technology] service solutions" to the VA, including software and hardware for "program management, strategy, enterprise architecture and planning; systems / software engineering; software technology demonstration and transition; test and evaluation; operations and maintenance; cybersecurity; training; [information technology] facilities; and other solutions encompassing the entire range of [information technology] and [healthcare information technology] requirements." AR1794.

The VA issued a request for proposals in March 2023. AR1793. After some amendments, the VA issued a fifth and final version of the solicitation three months later. AR1779-80. The proposed contract has a five-year term with one optional five-year extension. AR1798. The maximum overall value for the full ten years is $60.7 billion. AR1792. The VA planned to award the contract to the thirty highest-rated offerors offering a fair and reasonable price. AR1939. The VA reserved fifteen of the thirty contracts for service-disabled veteran-owned small businesses,

reserving one of the fifteen spots for a woman-owned business and another of the fifteen for a historically underutilized business zone. *Id*. This opinion sometimes refers to those allocations as the reserve requirement.

The solicitation outlined the process for evaluating offerors' proposals. AR1939-45. The VA would evaluate each proposal on a point system. AR1939-41. The solicitation listed factors that would warrant points, including commitment to spending contract-obligated funds on certain types of entities such as small businesses, the percentage of employees with veteran status, and past performance on relevant projects. AR1944-45. The VA intended to award contracts without conducting post-offer discussions with offerors but reserved the right to engage in discussions and request clarifications if necessary. AR1939.

For the first step of the evaluation process, the offerors would score their own proposals using a worksheet. AR1940; *see* AR1763-66 (model worksheet). The VA would then review the thirty top-scoring proposals for "acceptability" by verifying the self-reported scores. AR1940; AR1941 (M.1.2 Acceptability Review). If the VA found any score inaccurate, the VA would re-calculate that score and re-sort the proposals. AR1940. If the recalculation knocked an offeror out of the top thirty, the VA would review the next highest self-scored offeror. *Id.* Once the VA vali-dated thirty proposals with scores that were higher than the remaining self-scored proposals, de-termined that the top thirty proposals collectively satisfied the reserve requirement, and determined that each offered a fair and reasonable price, the VA would end its review and offer awards to those offerors. AR1940-41.

The solicitation included a process that the VA would use in case of a tie. AR1939. If between two and six offerors tied for the thirtieth spot, the VA would award a contract to all of the tied offerors, but if more than six offerors tied, none would receive a contract. AR1939-40. Instead,

only the top twenty-nine offerors would receive a contract. *Id*. If a tie occurred at any other position, the tied offerors would not share one position; each would be assigned its own position within the top thirty. *Id.* The solicitation also reserved to the VA the right to award more or fewer than thirty contracts in other scenarios. AR1940-41.

Offerors had until June 2023 to submit their proposals. AR1780. The VA received 173 eligible proposals. AR193528-29 [¶2]. The VA exercised its right to seek clarification from some offerors (AR204024-27) but did not engage in any discussions (AR193539).

The VA determined the thirty highest-rated proposals after evaluating 78 proposals. AR193537. According to the VA, those top thirty proposals offered fair and reasonable prices (AR193559) and were qualified for the award (AR193567-69). At least fifteen of the top thirty offerors satisfied the solicitation's reserve requirement. AR193538. The VA issued a public notice of its decision to award contracts to those top thirty offerors (AR193868-69), notified the unsuccessful offerors of their right to a debriefing (AR193551), and executed contracts with the thirty awardees.

Multiple unsuccessful offerors filed protests with the Small Business Administration (SBA). AR193551. The SBA found that two of the awardees, Veterans EZ and Sierra7, did not qualify as small businesses. AR202193-96; AR201510-14; AR203286. Thus, the VA re-scored those two awardees. AR193475; AR193517-18; AR193520-21; AR193551. With its new score, Veterans EZ dropped from fifth to seventeenth place. AR193240; AR193517-18; AR193551 [¶10]; AR204035-36. Although Veterans EZ was still eligible for the contract award, it no longer qualified for one of the reserve positions, and a different awardee, Zetta Solutions, took its spot as the fifteenth reserved position awardee to satisfy the solicitation's reserve requirement. AR193519; AR193551-51 [¶10]; AR203897. Re-scored, Sierra7 fell from twenty-eighth place to

forty-ninth place and was no longer eligible for a contract award. AR193521; AR193551 [¶10]. With that change, the VA determined that CGI Federal, the offeror in the thirty-first position, moved into the top thirty. AR193522. Because CGI Federal offered a fair and reasonable price (AR193565) and was otherwise qualified for the award (AR193570-71), the VA terminated its contract with Sierra7 and awarded a contract to CGI Federal instead (AR193553-54 [¶13]; AR193871-72; AR204047).

Technatomy filed a complaint in this court. ECF No. 1. Thirty other unsuccessful offerors followed, and the court consolidated the cases. One unsuccessful offeror, Leidos, voluntarily dismissed its complaint. ECF No. 270. And twenty-five of the remaining thirty plaintiffs amended their complaints. ECF Nos. 274-77, 279, 281-84, 287-298, 300-302, 304, 320.

## II.   Discussion

The government moves to dismiss one amended complaint in its entirety and twenty-one other amended complaints in part for failing to state a claim. ECF No. 307. The government argues that the solicitation's terms were clear and that the parties forfeited any challenges to the terms of solicitation by not raising them before the close of the bidding process. *Id.* at 1. The government raises six categories of challenges that were allegedly forfeited:

1. Challenges to the VA's decision to award only thirty contracts;

2. Challenges to the VA's evaluation of the small business participation commitment;

3. Challenges to the VA's evaluation of veteran employment;

4. Challenges to the VA's evaluation of relevant experience;

5. Challenges to the VA's evaluation of eligibility of certain joint ventures for the service-disabled veteran-owned small businesses reserve; and

6. A challenge to the VA's disqualification of Tribility.

*Id.* at 2-3.

Eight of the fifteen intervenors also move to dismiss, many raising the same grounds as the government, and some raising additional grounds. Intervenor GovCIO raises two additional forfeiture arguments. ECF No. 310 at 3. And intervenors raise one other category of arguments, requesting that the court dismiss certain claims, including those of a twenty-third plaintiff, ThunderYard Liberty, covering the VA's evaluation of whether each relevant experience project was used in only one proposal. ECF No. 310 at 19-20; ECF No. 315 at 33-34; ECF No. 412 at 154:22-157:7 (transcript from oral argument on motion to dismiss, Aug. 27, 2024).

The twenty-three plaintiffs named in the motions to dismiss responded, arguing that their claims do not challenge the terms of the solicitation and were not forfeited.

Dismissal for failure to state a claim under rule 12(b)(6) of the Rules of the Court of Federal Claims "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When evaluating a rule 12(b)(6) motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Id.* The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The court primarily considers the complaint but may also "look to matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (cleaned up). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012).

In bid protest cases, a disappointed bidder "who has the opportunity to object to the terms of a government solicitation containing a patent error" or patent ambiguity and does not object

before the bidding process closes forfeits or "waives its ability to raise the same objection subsequently in a bid protest action" in this court. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313-15 (Fed. Cir. 2007). The *Blue & Gold* waiver rule "applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so." *COMINT Systems Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012).

Whether an error or ambiguity is patent is a question of law. *M.R. Pittman Group, LLC v. United States*, 68 F.4th 1275, 1283 (Fed. Cir. 2023). "A defect in a solicitation is patent if it is an obvious omission, inconsistency, or discrepancy of significance" or "if it could have been discovered by reasonable and customary care." *Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020). An ambiguity is patent when the solicitation "contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). Other—latent—ambiguities are not apparent from the face of the solicitation and may be protested after contracts are awarded. *COMINT Systems*, 700 F.3d at 1382 n.5. Generally, ambiguities are read against the solicitation drafter—the government—as long as the offeror's interpretation is reasonable. *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004). But if the offeror "knows or has reason to know," or if it was reasonably discoverable, "that the drafting party … holds an interpretation different than [the offeror's], the result … should be no different than if the ambiguity were patent." *M.R. Pittman*, 68 F.4th at 1284.

The *Blue & Gold* waiver rule is not jurisdictional. *M.R. Pittman*, 68 F.4th at 1280. When a party, post-award, challenges the clear terms of the solicitation or points to a patent error in the solicitation, the party's claim should be dismissed under rule 12(b)(6). *Id.*

### A.      Plaintiffs may not challenge the VA's decision to make only 30 awards

The government moves to dismiss the following claims from six plaintiffs that challenge the VA's decision to award only thirty contracts.

| Plaintiff | Complaint ECF No. | Counts |
|---|---|---|
| Arrow Arc | 274 | XII |
| Omni Cares | 276 | XII |
| Vision Tech | 277 | XII |
| Intellect | 275 | XII |
| T4NG2 JV | 279 | XVI |
| Government Healthcare Solutions | 288 | XII |

ECF No. 307 at 10.

Each of those six plaintiffs alleges that the VA improperly "self-imposed" a hard limit of thirty contract awards, which was neither provided for in the solicitation nor in the best interests of the VA. ECF No. 274 at 112 [¶¶453-54] (Arrow Arc); ECF No. 275 at 97 [¶¶442-43] (Intellect); ECF No. 276 at 113 [¶¶508-09] (Omni Cares); ECF No. 277 at 101 [¶¶444-45] (Vision Tech); ECF No. 279 at 131 [¶¶574-75] (T4NG2 JV); ECF No. 288 at 40 [¶¶167-68] (Government Healthcare Solutions). In support, those plaintiffs point to two caveats in the solicitation—the tie-break rules and an on-ramp clause—and assert that the existence of a congressional investigation into the VA's award decisions is evidence of arbitrary conduct. ECF No. 274 at 112-14 [¶¶456-63]; ECF No. 275 at 98-100 [¶¶445-52]; ECF No. 276 at 113 [¶¶511-18]; ECF No. 277 at 101-03 [¶¶446-53]; ECF No. 279 at 131-33 [¶¶577-84]; *see* ECF No. 288 at 40-41 [¶¶163-66, 169].

The government argues that the language of the solicitation clearly informs offerors that the VA intended to award thirty contracts. ECF No. 307 at 10-11. And, according to the government, the solicitation expressly gives the VA broad discretion to determine how many contracts to award. *Id.* The government reads neither of the caveat provisions to undermine that discretion. *Id.*

at 11-12. The government adds that the congressional investigation cannot and does not alter the solicitation's clear meaning. *Id.* at 12-13.

The solicitation is clear: The VA "intend[ed] to award up to thirty contracts." AR1939; *see* AR1941 ("Once the Top 30 have been validated at a Fair and Reasonable price, and the reserves have been met, Acceptability Reviews will cease, and contract awards will be made.").

One of the solicitation's caveats provided the VA with procedures to award more or fewer contracts under the limited circumstances of a tie. The solicitation explained that the tie-breaking rules would apply "exclusively" if "two or more Offerors received an identical score" at the thirtieth position (AR1939), or "if there [was] a tie at the 15th non-[reserved] position" (AR1941). "Even if there is a single point difference, or even a hundredth of a point difference" between the thirtieth and the thirty-first ranked offerors, "only the Offeror in the 30th position will receive an award." AR1940. After the offerors were ranked, there was no tie for number thirty. *See* ECF No. 307 at 11.

The other caveat, the on-ramp provision, permitted the government to "add additional prime Contractors through any means deemed appropriate" and preserved the VA's right to exercise that option "at its sole discretion." AR1862. And in general, the government has broad discretion to determine which method of procurement is in its best interest. *Tyler Construction Group v. United States*, 570 F.3d 1329, 1334 (Fed. Cir. 2009); *Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958 (Fed. Cir. 1993) ("Effective [government] contracting demands broad discretion.").

The solicitation envisioned that the on-ramp might be used if an existing contractor were removed from the contract, but it was not limited to that scenario. AR1862 ("The Government may utilize an On-Ramp to add additional prime Contractors through any means deemed appropriate,

including in the event an Off-Ramp is exercised."). The solicitation did not require the government to exercise the option and award more than thirty contracts, either initially or ever. *Id.*; *see Optimal Data Corp. v. United States*, 17 Cl. Ct. 723, 731 (1989), *aff'd*, 904 F.2d 45 (Fed. Cir. 1990) (An option in a contract "does not create a legal obligation on the part of the government to exercise the option and require the work."); *Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988).

The six plaintiffs argue that the government's discretion is the problem: If the government has discretion to issue more than thirty awards and chooses not to exercise it, then that choice not to issue more than thirty awards was not evident pre-award and can be challenged later. ECF No. 412 at 29:13-31:17. The Federal Circuit recently addressed the same issue in *Oak Grove Technologies, LLC v. United States*, — F.4th —, 2024 WL 4138392, at *7-8 (Fed. Cir. Sept. 16, 2024). There, the plain language of a solicitation showed that the Army intended not to engage in discussions but reserved the right to, in its "sole discretion." *Id.* at *7. The Federal Circuit held that the offeror understood that the Army would likely not hold discussions and forfeited any challenge to the Army's eventual decision not to hold those discussions because the offeror did not challenge the plain terms of the solicitation pre-award. *Id.* at *8. Likewise, here, the VA's intention to limit itself to thirty awardees was evident on the face of the solicitation and could have been challenged pre-award.

The plaintiffs also point to Congress's investigation to argue that the government made an arbitrary decision to award only thirty contracts. ECF No. 274 at 113-14 [¶¶460-62]; ECF No. 275 at 99 [¶¶449-51]; ECF No. 276 at 115 [¶¶515-17]; ECF No. 277 at 102-03 [¶¶450-52]; ECF No. 279 at 132-33 [¶¶581-83]; *see* ECF No. 288 at 40-41 [¶169]. But that is just another way of challenging the terms of the solicitation. *See Smith v. Texas*, 550 U.S. 297, 314 (2007) (a claim's label

does not change its substance). The solicitation stated that the government intended to award thirty contracts, and the court gives the solicitation its plain meaning. *McAbee Construction Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996).

Neither caveat in the solicitation conflicts with or undermines the solicitation's clear statement that the government intended to award only thirty contracts. The plaintiffs cannot challenge that aspect of the solicitation, evident on its face, now that the VA has gone through with the award process. *See generally Blue & Gold*, 492 F.3d at 1313; *Oak Grove*, 2024 WL 4138392, at *7-8.

### B. Plaintiffs may challenge the VA's evaluation of offerors' small business participation commitment

The government moves to dismiss the following allegations from thirteen plaintiffs that challenge the VA's evaluation of offerors' small business participation commitment.

| Plaintiff | Complaint ECF No. | Counts |
|---|---|---|
| Veteran First | 281 | II, III |
| Innovenue | 292 | I, II |
| TISTA | 294 | II, III, X |
| Arrow Arc | 274 | II, X |
| Systematic Innovations | 282 | II, III |
| Vision Tech | 277 | II, X |
| Omni Cares | 276 | II, X |
| Government Healthcare Solutions | 288 | XI |
| King Street | 301 | II |
| Intellect | 275 | II, XI |
| Nine Line | 297 | VIII, IX, X |
| T4NG2 JV | 279 | II, X |
| DecisionPoint | 283 | I (¶¶66-69) |

ECF No. 307 at 14.

Each of those plaintiffs alleges that the VA acted arbitrarily by failing to evaluate and validate the offerors' small business participation commitments. ECF No. 274 at 42-52 [¶¶136-71] (Arrow Arc); ECF No. 275 at 40-43 [¶¶142-55], 94-97 [¶¶421-38] (Intellect); ECF No. 276 at 38-42 [¶¶135-48], 87-90 [¶¶391-407] (Omni Cares); ECF No. 277 at 39-42 [¶¶135-48], 88-91 [¶¶391-

405] (Vision Tech); ECF No. 279 at 43-46 [¶¶158-71], 94-97 [¶¶414-30] (T4NG2 JV); ECF No.

281 at 10-16 [¶¶44-66] (Veteran First); ECF No. 282 at 10-16 [¶¶44-66] (Systematic Innovations);

ECF No. 283 at 17 [¶¶66-69] (DecisionPoint); ECF No. 288 at 38-39 [¶¶154-59] (Government

Healthcare Solutions); ECF No. 292 at 9-16 [¶¶27-60] (Innovenue); ECF No. 294 at 28-32 [¶¶107-

24], 46-47 [¶¶183-89] (Tista); ECF No. 297 at 41-44 [¶¶151-66] (Nine Line); ECF No. 301 at 13-

15 [¶¶53-61], 16-21 [¶¶62-77] (King Street).

    The government argues that the solicitation clearly explains the VA's intended small-business-participation evaluation process, which required only an "acceptability" review for proposals committing to spend less than a 75% of their funds on small businesses. ECF No. 307 at 14-22. According to the government, a stricter review for "realism" was limited to proposals that committed to spend 75% or more of their funds on small businesses. The government argues that the plaintiffs' challenge would impose a "realism" requirement for everyone, contrary to the solicitation's terms. *Id.* at 13-14. Further, according to the government, an offeror's compliance with its own commitment is a matter of post-award contract administration, not proposal evaluation. *Id.* at 15 (citing AR1941; AR1945).

    By stating that the VA would conduct an acceptability review to "validate or invalidate the claimed points" (AR1939-41 (M.1.1-1.2)), the solicitation contemplated some amount of meaningful review of the offerors' proposed small business participation commitments. Further, the solicitation required all offerors "to submit Small Business Participation Commitment information." AR1935 (L.13.3). The solicitation stated that the VA would evaluate that information "to determine the extent to which the Offeror demonstrates a commitment to meeting the Small Business Participation Requirement for this procurement." AR1945 (M.4.3). While the VA required supporting narratives only for a proposed commitment of 75% or greater "to determine whether it

is reasonably realistic," there was still some amount of assessment the VA was required to undertake for lower commitments. *Id.*; *see also* AR1213 (answer 613). Thus, the solicitation contemplated some amount of review for any offeror's small-business-participation proposal. Furthermore, the implementing statute for government procurements likewise requires the government to "evaluate" the proposals it receives. 41 U.S.C. § 3701(a) ("An executive agency shall evaluate sealed bids and competitive proposals, and award a contract, based solely on the factors specified in the solicitation.").

While the government argues that compliance with the small business participation commitment is a matter of contract administration that will be addressed post-award (*see* AR1863), because the VA awarded points for the commitment, it is also a matter of proposal evaluation. Nothing in the solicitation confines the VA's review to the post-award timeframe.

Thus, the relevant question is whether the VA conducted a meaningful review to the extent that it is required by the statute and the solicitation. Although the government frames the plaintiffs' arguments as challenges to the terms of the solicitation (ECF No. 307; ECF No. 376), the plaintiffs are in substance challenging the small-business-participation evaluation process the VA undertook, to determine whether that process was sufficient under the terms of the solicitation read in light of the requirements of the statute. "[A] bidder cannot be expected to challenge an agency's evaluation of bids, in contrast to the terms of solicitation, until the evaluation occurs." *Bannum, Inc. v. United States*, 779 F.3d 1376, 1381 (Fed. Cir. 2015). Thus, the small-business-participation question cannot be decided on a motion to dismiss.

None of this discussion implies that the plaintiffs' claims would prevail on summary judgment. The VA's evaluation process may have been sufficient under the terms of the solicitation and requirements of the statute. It only means that the claims survive a motion to dismiss.

### C.    Plaintiffs may challenge the VA's evaluation of veteran employment

The government moves to dismiss the following allegations from twelve plaintiffs that challenge the VA's evaluation of offerors' veteran employment figures.

| Plaintiff | ECF No. | Count(s) |
|---|---|---|
| Kahu | 285-1 | III |
| Intellect | 275 | X |
| Arrow Arc | 274 | IX |
| Government Healthcare Solutions | 288 | X |
| Omni Cares | 276 | IX |
| Vision Tech | 277 | IX |
| Systematic Innovations | 282 | I |
| King Street | 301 | I |
| Veteran First | 281 | I |
| DecisionPoint | 283 | I (partial, ¶¶ 59-60, 69(2)) |
| Nine Line | 297 | V (partial, ¶¶ 51, 133) |
| T4NG2 JV | 279 | IX |

ECF No. 307 at 24.

Those plaintiffs allege that the VA was required to—and did not—investigate the veracity of the offerors' self-reported veteran employment figures. *See, e.g.*, ECF No. 281 at 9 [¶36] (Veteran First, alleging that the VA should not have accepted substantiating documentation "at face value"); ECF No. 282 at 9 [¶36] (Systematic Innovations); ECF No. 283 at 16-17 [¶¶59-60, 69] (DecisionPoint, alleging that the VA failed to "affirmatively validate offerors' proposal information"); ECF No. 288 at 31 [¶151] (Government Healthcare Solutions); ECF No. 301 at 11 [¶¶41-42] (King Street, criticizing the failure to "evaluate whether the Awardees' veterans employment numbers were actually correct"); ECF No. 320 at 28-29 [¶¶71-73] (Kahu, alleging that the "VA was required to determine the extent to which the claimed Veterans were employees that correlated to the [unique employer identification number] of the Prime Offeror submitting the proposal"). The plaintiffs argue that the VA allowed bidders to submit unchecked, manipulated scores. ECF No. 274 at 91-92 [¶¶390-93] ECF No. 275 at 89-93 [¶¶397-420]; ECF No. 276 at 83-87 [¶¶370-

90]; ECF No. 277 at 83-88 [¶¶370-90]; ECF No. 279 at 90-94 [¶¶393-413]. Nine Line raises, in particular, the VA's evaluation of DigiPathy, alleging that the VA failed to consider "readily-available public information indicating that DigiPathy's actual veteran employment percentage is very likely substantially less than its claimed veteran employment percentage." ECF No. 297 at 37 [¶133]; *see id.* at 15 [¶51].

The government argues that the solicitation did not require the VA to investigate the accuracy of offerors' self-reported, certified veteran employment figures. ECF No. 307 at 24-28. According to the government, the VA only had to conduct an acceptability review, in which the VA evaluated only an offeror's substantiating documents and self-reporting spreadsheets. *Id.* at 27 (citing AR1941, AR1944). Thus, according to the government, the VA did not need to look beyond any proposal to certify the offeror's veteran employment figures. *Id.* at 24-28.

As with small business participation (*supra* II.B), by stating that the VA would conduct an acceptability review (AR1939-41 (M.1.1-1.2)), and in light of the statutory obligation to "evaluate" proposals (41 U.S.C. § 3701(a)), the solicitation contemplated some amount of review of the offerors' veteran employment figures. The solicitation explained that the "Acceptability Review consists of evaluating the Offeror's substantiating documentation to validate or invalidate the claimed points" (AR1941 (M.1.2)), so the level of evaluation that the VA intended to do was clearly low. But the solicitation also explained that each "proposal will be evaluated to determine the extent to which Veterans are employed by the Prime Offeror." AR1944 (M.4.2). Thus, the solicitation did not indicate that the VA would confine its review to the statements made by offerors, within the self-reported documentation on veteran employment, without any checks on those statements.

The solicitation also instructed that "[t]o the extent possible, each document shall contain the Offeror's [unique entity identification number] and [commercial and government entity code]." AR1905 (L.10.2). Although that information was not mandatory (*id.*), each of the intervenors submitted it (ECF No. 412 at 85:21-86:7). The unique entity identification number and commercial and government entity code databases contain information relevant to the offerors' veteran employment percentages. As the government explained, unique entity identification numbers show whether an offeror is a small business or not. ECF No. 412 at 101:11-16. Knowing the size of a business could show that an offeror was relying on an incorrect denominator in calculating the percentage of employees that were veterans. Thus, the VA had access to additional information from the offerors' proposals that could be used to conduct an acceptability review.

The relevant question here is whether the VA conducted a meaningful review, meeting its obligations under the statute and the solicitation. Although the government frames the argument as a challenge to the terms of the solicitation (ECF No. 307; ECF No. 376), the plaintiffs are also challenging the VA's evaluation process and whether the VA actually reviewed the documents the offerors submitted. That question cannot be decided on a motion to dismiss. *See Bannum*, 779 F.3d at 1381.

**D.    Plaintiffs may challenge the VA's evaluation of relevant experience**

The government moves to dismiss the following allegations from six plaintiffs that challenge the VA's evaluation of offerors' relevant experience.

| Plaintiff | ECF No. | Count(s) |
|---|---|---|
| CSE Vets | 295 | I |
| VA Technology | 296 | I |
| T4NG2 JV | 279 | XI (partial, [¶¶442-44, 450-52, 456-58]) |
| Mission Training | 289 | II |
| InteVets | 139 | II |
| 360 Innovative Solutions | 291 | IV |

ECF No. 307 at 28.

Those plaintiffs allege that the VA was required to—and did not—review all of the submitted information in evaluating offerors' relevant experience. ECF No. 139 at 16 [¶¶58-64] (InteVets); ECF No. 279 at 97-102 [¶¶431-461] (T4NG2 JV); ECF No. 289 at 30-34 [¶¶77-91] (Mission Training); ECF No. 291 at 31-33 [¶¶148-54] (360 Innovative); ECF No. 295 at 5-13 [¶¶23-52] (CSE Vets); ECF No. 296 at 6-13 [¶¶23-47] (VA Technology). According to the plaintiffs, offerors submitted narratives in Attachment 17 with details that demonstrated their relevant experience, and the VA ignored those details in favor of the separate scope-of-work documents. *Id.*

The government argues that the solicitation required the VA to validate offerors' points for their relevant experience projects by evaluating all substantiating documentation, not just the statements in Attachment 17. ECF No. 307 at 30.

The parties seem to mostly agree on the requirements of the solicitation with respect to relevant experience: The VA was required to review and evaluate each of the documents that the offerors submitted. The solicitation stated that the VA would conduct an acceptability review of each offeror's self-scored relevant experience, "evaluating the Offeror's substantiating documentation to validate or invalidate the claimed points." AR1941. The parties disagree on whether the VA sufficiently evaluated those documents. That is a merits question, not a challenge to the solicitation's methodology. As the government acknowledges, if the "plaintiffs challenge whether [the]

VA had a rational basis for how it weighed conflicting information ... , that would indeed be a merits issue" that would make dismissal inappropriate. ECF No. 376 at 25.

The plaintiffs raise whether the VA ignored some substantiating documents in favor of other substantiating documents. That challenge to the VA's evaluation process, like the challenges to small business participation and veteran employment figures, cannot be decided on a motion to dismiss.

### E.  Plaintiffs may not challenge the status of certain joint ventures as service-disabled veteran-owned small business ventures

The government moves to dismiss allegations from eleven plaintiffs challenging the VA's determination that certain joint ventures were eligible as service-disabled veteran-owned small business (SDVOSB) ventures.

| Plaintiff | ECF No. | Count(s) |
|---|---|---|
| Freedom Tech | 298 | III |
| Pinnacle | 293 | IV, V |
| TISTA | 294 | V |
| Government Healthcare Solutions | 288 | IX |
| Intellect | 275 | VI |
| Arrow Arc | 274 | VI |
| Omni Cares | 276 | VI |
| T4NG2 JV | 279 | VI |
| Vision Tech | 277 | VI |
| Systematic Innovations | 282 | V |
| Veteran First | 281 | V |

ECF No. 307 at 31-32.

Those plaintiffs allege that seven joint venture awardees were not eligible for the reserved SDVOSB positions because those awardees were required to be, but were not, certified in the SBA's Veteran Small Business Certification (VetCert) database. *See* ECF No. 274 at 73-78 [¶¶301-20] (Arrow Arc); ECF No. 275 at 70-75 [¶¶307-26] (Intellect); ECF No. 276 at 69-74 [¶¶300-19] (Omni Cares); ECF No. 277 at 69-74 [¶¶300-19] (Vision Tech); ECF No. 279 at 74-

79 [¶¶323-42] (T4NG2 JV); ECF No. 281 at 19-21 [¶¶74-84] (Veteran First); ECF No. 282 at 19-20 [¶¶74-84] (Systematic Innovations); ECF No. 288 at 37 [¶¶142-47] (Government Healthcare Solutions); ECF No. 293 at 17-20 [¶¶65-78] (Pinnacle); ECF No. 294 at 38-40 [¶¶142-53] (TISTA); ECF No. 298 at 30-32 [¶¶1-8] (Freedom Tech). Those plaintiffs argue that several statutory and regulatory provisions require joint ventures to be certified. They also argue that additional sources—the frequently-asked-questions page on the SBA's VetCert website and the question-and-answer section of the second draft of the solicitation—support their understanding. Because the VA awarded seven of the SDVOSB-reserved positions to joint ventures that were not certified in VetCert, the plaintiffs allege that the VA acted arbitrarily.

The government argues that nothing in the solicitation, including the incorporated statute and regulations, requires a joint venture to be certified in VetCert. Instead, the government argues, the solicitation requires only that the managing partner of the joint venture be certified; the joint venture entity does not need to be independently certified. ECF No. 307 at 32. According to the government, the additional sources that the plaintiffs cite are not part of the solicitation. ECF No. 307 at 33-35; ECF No. 376 at 32-35. Thus, according to the government, the solicitation's terms are clear, and the plaintiffs have not stated a claim. ECF No. 307 at 31-36; ECF No. 376 at 28-42.

The solicitation was clear that joint ventures did not need to be independently certified in VetCert to be eligible for an SDVOSB-reserved award. That is evident from the text of the solicitation itself, the incorporated statutes and regulations, and the extrinsic evidence the plaintiffs cite. The government is correct that the solicitation requires only that the joint venture's managing partner be certified. *See generally* ECF No. 359 at 7-8 (Pinnacle admitting that only the managing partner needs to be certified despite opposing dismissal on this ground).

19

The solicitation discusses the certification requirement for joint ventures. Part I.17 defines SDVOSBs and outlines the requirements to be considered for one of the SDVOSB-reserved awards, as an individual business or as a joint venture. AR1886-1889. Paragraph (f) addresses the joint venture eligibility requirements, as distinct from SDVOSB individual business eligibility requirements. AR1889. It states that a "joint venture may be considered eligible as an SDVOSB if the joint venture complies with the requirements in 13 CFR 128.402 and the managing joint venture partner makes the representations under paragraph (c) of this clause." *Id.* The cited regulation, 13 C.F.R. § 128.402(a), clarifies that the "joint venture itself need not be a certified VOSB or SDVOSB" and adds that, to be eligible for an award, only the managing partner must satisfy all of the requirements, including certification. As some intervenors point out, an earlier proposed version of the regulation required SDVOSB joint ventures to be certified to be eligible, but that requirement was eliminated from the final rule. ECF No. 412 at 128:10-129:6; *compare* 87 F.R. 40160 (§ 128.402(a)) (proposed rule) ("Certification. For [certain] VA contracts, a … joint venture must be certified to submit an offer…. For all other … contracts, joint ventures may apply for certification.") *with* 87 F.R. 73421 (§ 128.402(a)) (final rule). While the parties argue about the requirements of paragraph (c), it is cited in paragraph (f) only for the representations that the managing partner—as an SDVOSB itself—must make. Paragraph (c) otherwise addresses SDVOSBs that are individual businesses, not joint ventures. Those businesses, applying alone, must be certified in VetCert. But the requirements of paragraph (c) generally apply only to individual businesses. AR1887.

Reading the entire solicitation, for a joint venture, only the managing partner must be certified in VetCert. There is no conflict between section I.17(f) and the remainder of I.17, or with any other incorporated provision.

The other evidence that the plaintiffs cite does not change the solicitation's meaning, that only the managing partner must be certified in VetCert. The SBA's website's frequently-asked-questions page is unrelated to this particular solicitation. "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; [a court] may not resort to extrinsic evidence to interpret them." *Banknote Corp. of America, Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). The draft solicitation's question-and-answer section stated that any answers at that time would not override the terms of the ultimate solicitation. AR484 ("[T]he information contained within the Questions and Answers does not take precedence to the forthcoming final T4NG2 solicitation."). Thus, any earlier answers also cannot override the terms of the ultimate solicitation. *See generally Harvey v. United States*, 8 Ct. Cl. 501, 506 (1872) ("[T]he written contract is the last and most deliberate act of the parties … therefore all the preliminary papers passing between the parties while the contract was *in fieri*, are … inadmissible to contradict or vary the written agreement."); *cf. Per Aarsleff A/S v. United States,* 829 F.3d 1303, 1311 (Fed. Cir. 2016) (explaining that "[b]ecause the relevant question and answer was incorporated into the final … solicitation, it is part of the final solicitation" and therefore controls).

And both pieces of extrinsic evidence actually support the government's interpretation of the solicitation. The frequently-asked-questions page is consistent with the solicitation, explaining that "Joint Ventures do not get certified as SDVOSBs or VOSBs" by the SBA. *See* Answer to Does my Joint Venture need to get certified by SBA?, Amanda Nappier, Does my Joint Venture need to get certified by SBA? (Dec. 22, 2023), https://sbaone.atlassian.net/wiki/spaces/VCKB/pages/2861662428/Does+my+Joint+Venture+need+to+get+certified+by+SBA.

The final solicitation's question-and-answer section rewrote the earlier draft answer to align with the rest of the solicitation. The earlier draft question stated, "Since the SBA assumed …

verification responsibilities … and since the SBA's recently published final rule … indicates that [joint ventures] will no longer be certified / verified … , please confirm that … so long as the Managing Member of the [joint venture] is a current verified SDVOSB / VOSB, the [joint venture] is considered verified / certified." AR 649. The draft answer responded, "As long as the [joint venture] is registered in VetCert and the managing partner is registered as an SDVOSB, then the [joint venture] itself is also considered an SDVOSB." *Id.* In contrast, the final question-and-answer section omitted the reference to the joint venture being registered, stating, "[Question:] Can the individual partners be listed in the SBA Certification database, or must the Joint Venture be listed? [Answer:] The managing joint venture partner must be listed in addition to the [joint venture] complying with the requirements in 13 CFR 128.402." AR1205.

The SBA's Office of Hearings and Appeals agreed with the government's interpretation when it dismissed a challenge to seven awardees under the same contract at issue here. In a post-award bid protest in front of the SBA, the parties made the same argument, that the same joint ventures were ineligible for an award because they had not been certified in VetCert. *VSBC Protest of Freedom Technology Partners, LLC*, SBA No. VSBC-321-P, 2023 WL 8798603, at *1 (Dec. 4, 2023), *reconsideration denied*, SBA No. VSBC-329-P, 2024 WL 301965 (Jan. 9, 2024). The administrative judge explained, "there is no requirement that [joint ventures] certify as SDVOSBs under 13 C.F.R. § 128.402(a)." *VSBC Protest of Freedom Technology Partners*, 2024 WL 301965 at *6.

Some plaintiffs argue that even if the solicitation did not require the joint venture to be certified, the solicitation still required the joint venture to be "designated" as an SDVOSB. *E.g.,* ECF No. 359 at 5-8. Certification and designation are distinct: Certification is governed by 13 C.F.R. Part 128. As the government argues, "[d]esignation is nothing that's provided for in any

statute, regulation, nor the solicitation itself." ECF No. 412 at 118:15-119:4. An existing SDVOSB may self-designate as a joint venture, but that is not legally binding and does not make the joint venture eligible to compete as an SDVOSB. *Id.* Indeed, the government points out that designation allows an already-certified SDVOSB to claim a joint venture. ECF No. 376 at 29. So designation comes after, not instead of, certification.

Some plaintiffs rely on an email from a VA director of procurement services, Robert Kirzow, to other VA employees, stating that the SBA is "having [joint ventures] entered into VetCert with a [joint venture] Designation." AR331496.002. But that email chain, in addition to being extrinsic evidence, supports the government's interpretation. Later in the same email chain, he stated that joint ventures are not required to be designated. *Id.* Further, in response to Mr. Kirzow's emails, the VA deputy director of acquisition support confirmed that as long as "the managing member [of the joint venture] is the SDVOSB and is certified, the [joint venture] is good." AR331496.001-.002.

The plaintiffs also rely on statements from the SBA's website: frequently-asked-question pages regarding the VetCert database and the certification program. ECF No. 274 at 74 [¶306]; ECF No. 275 at 71 [¶312]; ECF No. 276 at 70 [¶305]; ECF No. 277 at 70 [¶305]; ECF No. 279 at 75-76 [¶328]; ECF No. 293 at 18 [¶70]; ECF No. 294 at 19, 38 [¶¶64, 145]; ECF No. 298 at 32 [¶6]. The website states that joint ventures "must be 'designated' as eligible." Amanda Nappier, *Does my Joint Venture need to get certified by SBA?* (Dec. 22, 2023); *see* Small Bus. Admin., *Veteran Small Business Certification Program FAQs* (Dec. 2022), https://www.sba.gov/sites/default/files/2022-12/VetCert_FAQs_121322_508c.pdf, p. 6 at ¶ 15(c)(6) ("Joint ventures do not require certification although the managing partner must be SBA certified and the joint venture must request designation.").

But the solicitation and the regulations it incorporates only discuss certification. Nothing in the solicitation's terms (*see* AR1886-1889 (I.17)) or the regulations (13 C.F.R. § 128.402; VAAR § 819.7003(b)-(c)) indicates that joint ventures must be designated after the managing partner is certified. Only the requirements in the solicitation and regulations—which are limited to certification—control. *Per Aarsleff A/S,* 829 F.3d at 1311. Thus, the solicitation is clear, and the government did not impose an additional designation requirement on SDVOSB joint ventures.

Because the solicitation clearly states the eligibility requirements for joint ventures to be considered SDVOSBs, the plaintiffs cannot challenge that aspect of the solicitation, now that the VA has awarded contracts under it. *See Blue & Gold*, 492 F.3d at 1313.

## F.    Tribility fails to state a claim for relief

The government moves to dismiss Tribility's complaint. Tribility—a joint venture between Trilogy Federal LLC and Ibility LLC—alleges that the VA wrongly disqualified its proposal when it failed to name a responsible manager in its joint venture agreement. ECF No. 99 at 3 [¶4], 6 [¶19]. Tribility argues that, under the applicable regulations, it did not need to identify a responsible manager until after the government awarded the contract. *Id.*; ECF No. 350 at 3-4. Tribility also argues that the government acted arbitrarily and capriciously by not requesting that information from Tribility when seeking clarifications from other offerors during the evaluation process. ECF No. 350 at 5.

The government moves to dismiss Tribility's complaint, which would result in also dismissing Tribility as a party from the consolidated action. ECF No. 307 at 36-38. The government argues that the VA complied with the terms of the solicitation when it disqualified Tribility for failing to identify a responsible manager. *Id.* (citing AR1911-16). The government argues that the solicitation is clear and required Tribility to provide that information in its proposal. *Id.* at 37. The government adds that the VA could not have sought clarification from Tribility because

clarification is limited to clerical issues, and Tribility's omission of a material requirement was beyond the scope of clarification. ECF No. 376 at 46.

Tribility fails to state a claim for relief because the solicitation is clear that Tribility needed to identify a responsible manager. Part L.10.5 of the solicitation lays out the requirements for submitting a proposal as a joint venture. AR1911-16. Each offeror must "submit a complete copy of the joint venture agreement that includes the information required by 13 CFR 125.8(b)" (AR1911) or "by 13 CFR 128.402(c)" (AR1913) as part of its proposal. Both regulations—which the solicitation excerpted in relevant part—state that every joint venture agreement "must contain a provision … designating a named employee … as the manager with ultimate responsibility for performance of the contract (the 'Responsible Manager')." AR1911 (quoting 13 C.F.R. § 125.8(b)(2)(ii)); AR1913-14 (quoting 13 C.F.R. § 128.402(c)(2)). The VA cited that text from the regulations as the reason for Tribility's disqualification in a debrief. ECF No. 99-1 at 37.

Tribility argues that only section 128.402 applies to it. ECF No. 350 at 3-4. But, even if true,[2] Tribility's argument—that the text of the regulation "only required Tribility to designate an individual [as a responsible manager] once it had received notice from the Government that is was an apparently successful offeror" (ECF No. 350 at 3)—does not follow. *See* AR1911-16. Section 128.402(e) governs certification of compliance before and at the time of an offer. Section 128.402(e)(2)(ii) states that "[a]lthough the managing venturer must be a certified VOSB or SDVOSB as of the date of the joint venture's initial offer … the joint venture must meet the joint venture agreement requirements set forth in paragraph (c) of this section at the time the joint venture is identified as an apparent successful offeror." Section 128.402(e)(2)(ii) thus creates an

---

[2] Tribility's joint venture agreement apparently was established under section 128.8, not section 128.402. AR107504.

additional certification obligation after an offeror is successful. It does not relieve an offeror of the obligation to identify a responsible manager in the proposal in the first place under section 128.402(c)(2).

Even if subsections (c) and (e) were in conflict, the solicitation quotes subsection (c) but does not quote or incorporate by reference subsection (e). AR1913-15. The Federal Circuit is "reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation." *St. Christopher Associates, L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008); *see Northrop Grumman Information Technology, Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008) (The language of the contract "must explicitly, or at least precisely, identify the written material being incorporated."). Tribility does not point to any authority requiring the court to read the absent parts of an incorporated regulation into the solicitation. *See generally* ECF No. 99; ECF No. 350.

Tribility admits that it did not identify a responsible manager in its proposal. ECF No. 99 at 3 [¶4], 6 [¶19]. That error was material and a basis for disqualification. AR1916 (L.10.5) ("Failure to provide the Government with the requested documentation establishing the joint venture will be considered a material nonconformity and will result in the Offer being rejected."). "A proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable." *Allied Technology Group, Inc. v. United States*, 649 F.3d 1320, 1329-30 (Fed. Cir. 2011).

As for Tribility's argument that the VA should have sought clarification rather than rejecting Tribility's offer, it is not clear that the VA was even at liberty to seek a clarification to fix a material error. *See Man Tech Advanced Systems Int'l v. United States*, 141 Fed. Cl. 493, 507 (2019) ("In contrast to material errors which cannot be waived or fixed without discussions, [Federal

Acquisition Regulation] 15.306(a) provides that obvious, clerical mistakes may be fixed through clarifications. … [However], clarifications may not provide new information or alter already provided information."). Regardless, nothing required the VA to seek a clarification here. AR1939 (stating that the VA "may conduct clarifications").

Because the solicitation was clear that an offer from a joint venture like Tribility needed to include a responsible manager, Tribility cannot challenge that aspect of the solicitation now, post-award. Tribility's complaint fails to state a claim on which this court can grant relief.

### G.   Government Healthcare Solutions' count IV is withdrawn

In its complaint, Government Healthcare Solutions alleged that the VA "failed to evaluate whether Offerors complied" with the solicitation's requirement that each offeror could only be a party to a single proposal. ECF No. 288 at 29-30 [¶¶104-08]. According to Government Healthcare Solutions, the VA arbitrarily and capriciously reviewed only 78 of the proposals that it received and thus did not know whether there were any duplicate offerors. *Id*. at 30 [¶¶ 106-08]. Only Government Healthcare Solutions made that allegation in its complaint.

Intervenor GovCIO moved to dismiss that count in Government Healthcare Solutions' complaint on a waiver theory. ECF No. 310 at 17. In response, Government Healthcare Solutions withdrew that count—count IV of its amended complaint—and stated that it "does not oppose dismissal of this protest ground." ECF No. 367 at 5. Because Government Healthcare Solutions voluntarily withdrew its claim, the court will dismiss count IV of its amended complaint.

### H.   The court will not dismiss the additional intervenor challenges

Any additional issues on which intervenors move to dismiss that are not addressed in the government's motion (*e.g.*, ECF No. 308 at 20-22 (VCH Partners); ECF No. 309 at 14-17 (T4Designs); ECF No. 310 at 3, 19-20 (GovCIO); ECF No. 315 at 29-34 (Canopy Health and RP & Partners)), including the issue involving ThunderYard Liberty and relevant experience projects

being available to only one offeror, address the merits of the VA's evaluation process. *See generally* ECF No. 351 at 7-8, 17-18; ECF No. 369 at 5-6. The court will deny those grounds of the motions to dismiss.

### III. Conclusion

For the reasons stated above, under this court's rule 12(b)(6), the court **grants** the government's motion to dismiss the counts of plaintiffs' complaints that raise the VA's decision to award only thirty contracts and the counts that raise the VA's evaluation of eligibility of certain joint ventures as service-disabled veteran-owned small businesses. The court **grants** intervenors' motions to dismiss on the same grounds.

The court **grants** the government's motion to dismiss Tribility's complaint and **dismisses** Tribility as a party to this case. There is no reason for delay and thus under rule 54(b), the Clerk of the Court shall enter final judgment as to Tribility. The court further **orders** the deconsolidation of member case, *Tribility LLC v. United States* (Case No. 24-530), from this action. Case No. 24-530 is **dismissed**.

The court also **grants** GovCIO's motion to dismiss count IV of Government Healthcare Solutions' amended complaint (ECF No. 288).

The counts of complaints that are dismissed are thus summarized in the following table.

| Plaintiff | ECF No. | Count(s) |
|-----------|---------|----------|
| Arrow Arc | 274 | VI, XII |
| Omni Cares | 276 | VI, XII |
| Vision Tech | 277 | VI, XII |
| Intellect | 275 | VI, XII |
| T4NG2 JV | 279 | VI, XVI |
| Government Healthcare Solutions | 288 | IV, IX, XII |
| Freedom Tech | 298 | III |
| Pinnacle | 293 | IV, V |
| TISTA | 294 | V |
| Systematic Innovations | 282 | V |
| Veteran First | 281 | V |
| Tribility | 99 | Entire complaint |

The court **denies** the government's motion to dismiss the counts of plaintiffs' complaints that raise the VA's evaluation of small business participation commitment, veteran employment, and relevant experience. The court **denies** intervenors' motions to dismiss on the same grounds. The court further **denies** all additional grounds for dismissal raised by the intervenors.

**IT IS SO ORDERED.**

  s/ Molly R. Silfen
MOLLY R. SILFEN
Judge